**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
JAMES CLYNE, JR.,            :
                             :
          Plaintiff,         :
                             :
v.                           :   CIV. NO. 3:15cv1595(AWT)
                             :
UNITED FOOD AND COMMERCIAL   :
WORKERS' UNION LOCAL 919 AND :
CONTRIBUTING EMPLOYERS' FOOD :
PENSION PLAN, and BOARD OF   :
TRUSTEES FOR UNITED FOOD AND :
COMMERCIAL WORKERS' UNION    :
LOCAL 919 AND CONTRIBUTING   :
EMPLOYERS FOOD PENSION PLAN, :
                             :
          Defendants.        :
                             :
-----------------------------x
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, James Clyne ("Clyne"), brings this action against defendants United Food and Commercial Workers Union Local 919 and Contributing Employers' Food Pension Plan, and the Board of Trustees for United Food and Commercial Workers' Union Local 919 and Contributing Employers Food Pension Plan. The plaintiff alleges that the defendants improperly denied him disability benefits under his pension plan, in violation of the Employment and Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). The defendants have moved for summary judgment. For the reasons set forth below, the defendants' motion for summary judgment is being granted.

I.   **FACTUAL BACKGROUND**

　　The United Food and Commercial Workers' Union Local 919 and Contributing Employers' Food Pension Fund ("Fund") was established pursuant to a trust agreement, and its assets are held in trust.  The Fund's Board of Trustees ("Board of Trustees") is the plan administrator of the United Food and Commercial Workers' Union Local 919 and Contributing Employers' Food Pension Plan ("Plan").  The Plan is an employee benefit plan within the meaning of 29 U.S.C. § 1002(2).  The Plan was established pursuant to collective bargaining agreements between the United Food and Commercial Workers Local 919 ("Local 919") and employers whose employees are represented for purposes of collective bargaining by Local 919.  Neither Local 919 nor any of the employers who contribute to the Plan are parties to this proceeding.  The Board of Trustees is comprised of an equal number of union-appointed and employer-appointed trustees.

　　The Plan is a defined benefit pension Plan.  Under the Plan, participants accrue a right to a benefit that is defined in the Plan, and the benefit amount is determined by years and partial years of benefit service in either full-time or part-time covered employment.  The Plan provides that benefits are payable upon normal retirement or early retirement.  The Plan also provides for a deferred vested retirement benefit for those who leave employment prior to their earliest retirement date

-2-

under the Plan.  In addition, The Plan provides for a benefit
when a participant retires due to permanent disability before
his earliest retirement date under the Plan.  The Plan defines
"disability" as follows:

> Disability means a physical or mental condition which
> totally and presumably permanently prevents a[] Participant
> from engaging in any regular renumerative occupation or
> employment.  Disability under the Plan shall be considered
> total and permanent if the Participant has provided the
> Trustees with proof that the Social Security Administration
> has determined that the Participant is entitled to a
> Disability Insurance Benefit under the Federal Social
> Security Act and shall continue so long as the Participant
> remains qualified for a Disability Insurance Benefit under
> the Federal Social Security Act and for so long as the
> Participant remains unable to engage in any regular
> renumerative occupation or employment.

(Def.'s Local Rule 56(a)(1) Statement, Doc. No. 22-2, at ¶ 8.)

Clyne was a participant in the Plan because he worked for
Stop & Shop Supermarket Company, LLC ("Stop & Shop"), in a
position for which Stop & Shop was required to contribute to the
Plan.  Clyne was a part-time employee.

The Fund's office received Clyne's pension application form
on September 23, 2014.  The application identified April 1, 2014
as the last day Clyne worked and stated that Clyne became
disabled as of April 2014 due to a knee injury.  The Fund's
office staff contacted Clyne's employer, which stated that
Clyne's last day of work was March 22, 2014 and that its records
showed that the reason for termination was "Personal Reason,"
not disability or some other medical reason.  (Local Rule

56(a)(1) Statement at ¶ 11.)   In the course of its investigation, the Fund's office staff was given information that showed that Clyne had seen his treating physician, Dr. Zell, in June 2013 but never saw that doctor again while working for Stop & Shop.  The administrative record reflects that Dr. Zell evaluated Clyne on July 8, 2014, and certified his disability over three months after the termination of employment.

Based on the investigation, Clyne's benefit claim was denied.  The denial was communicated in a letter dated September 29, 2014 that informed Clyne:

> The specific reason for the denial of a Disability Pension is that according to our records you did not terminate your employment with Stop & Shop on account of disability.  Your termination did not following [sic] a six-month period of disability.  At the time of your termination you had not been seen by your doctor since July 19, 2013.

(Local Rule 56(a)(1) Statement at ¶ 13.)[1]

Clyne appealed the denial of his claim.  A letter from

---

[1] Although the letter states that Clyne's termination did not follow a six-month period of disability, that was not a requirement under the provisions of the Plan that have been furnished to the court.  Section 6.4 of the Plan, which is titled "Disability Benefit," provides that "A Participant who ceases employment with an Employer on account of Disability and who has five or more Years of Benefit Service, at least 1/4 year of which is Future Service, will be eligible to receive a monthly benefit as of the first day of the month coinciding with or next following a six-month period of Disability."  (Aff. of Patricia Franzese, Doc. No. 22-3, at ¶ 7.)  Thus, this provision requires that the participant have completed a six-month period of disability prior to receiving disability benefits, not that the participant have been disabled for six months before the participant can retire due to a permanent disability.  The inclusion of this sentence in the letter stating the reasons for denial of the claim does not affect the court's analysis, however, because the letter clearly states that the specific reason for denial is that Clyne did not terminate his employment on account of disability.

Clyne's attorney stated:

> Dr. Zell, as the physician who performed a number of
> procedures and surgeries on Claimant's right knee
> determined that he could no longer perform his duties as a
> Bagger for the Respondent.  Accordingly, continuation of
> his work-related activities, in defiance of his treatment
> physician's order, would have further compromised the
> Claimant's medical condition, posing a grave risk to his
> present and future well-being.

(Local Rule 56(a)(1) Statement at ¶ 14.)

Upon review of the appeal, the Fund's office staff

recommended denial of the appeal on the basis that the record

contained no evidence that Clyne had ceased his employment at

Stop & Shop on account of disability.  The Board of Trustees

denied the appeal.

The Plan grants discretion to the Board of Trustees, as the

plan administrator, to construe the terms of the Plan and to

determine questions of eligibility for benefits:

> The Plan shall be administered solely by the trustees and
> employees or agents of the Trustees, acting for them as
> authorized, and the decisions of the Trustees in all
> matters pertaining to the administration of the Plan shall
> be final.  The Trustees shall make such rules and prescribe
> such procedures for the administration of the Plan as they
> shall deem necessary and reasonable.  The Trustees are
> expressly granted the discretion to construe the terms of
> the Plan, determine eligibility for benefits hereunder,
> correct defects, supply omissions or reconcile
> inconsistencies to the extent necessary to effectuate the
> Plan and any such action shall be conclusive to the extent
> permitted by law.

(Def.'s Mem. in Supp. of Mot. for Summ. J., Doc. No. 22-1, at

4.) (emphasis in original).

II.   **LEGAL STANDARD**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987).  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  A

material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.  Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). However, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment.  Stern v. Trustees of Columbia University, 131 F.3d 305, 315 (2d Cir. 2007) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).

## III. DISCUSSION

"[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995) (internal

citation and quotation marks omitted).  See also Tocker v.
Philip Morris Cos., Inc., 470 F.3d 481, 487 (2d Cir. 2006)
("[I]f a plan administrator clearly has been granted
discretionary authority in the plan documents, a court will
defer to the administrator's decision.").

"The plan administrator bears the burden of proving that
the deferential standard of review applies."  Fay v. Oxford
Health Plan, 287 F.3d 96, 104 (2d Cir. 2002).  Here, the
defendants have shown that the language of the Plan explicitly
gives discretion to the Board of Trustees as plan administrator,
so the arbitrary and capricious standard of review applies.

> Under the arbitrary and capricious standard of review, we
> may overturn a decision to deny benefits only if it was
> "without reason, unsupported by substantial evidence or
> erroneous as a matter of law." Abnathya v. Hoffman-La
> Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (quotation
> omitted); see also Bowman Transp., Inc. v. Arkansas-Best
> Freight Sys., 419 U.S. 281, 285, 95 S. Ct. 438, 442, 42
> L.Ed.2d 447 (1974) ("A reviewing court must consider
> whether the decision was based on a consideration of the
> relevant factors and whether there has been a clear error
> of judgment.") (quotation omitted). This scope of review is
> narrow, thus we are not free to substitute our own judgment
> for that of the NYNEX Committee as if we were considering
> the issue of eligibility anew. See Bowman, 419 U.S. at 285,
> 95 S. Ct. at 442; Jordan, 46 F.3d at 1271 ("The court may
> not upset a reasonable interpretation by the
> administrator.") (citations omitted).

Pagan, 52 F.3d at 442.

The court must consider whether the plan administrator's
"decision was based on a consideration of the relevant factors
and whether there has been a clear error of judgment," and the

-8-

court "may not upset a reasonable interpretation by the administrator." Zuckerbrod v. Phoenix Mut. Life Ins. Co., 78 F.3d 46, 49 (2d Cir. 1996) (internal citation and quotation marks omitted). "[A] plan administrator's decision is intended to be final — within the bounds of the highly deferential arbitrary-and-capricious standard — and not merely an input with the potential to assist the Court in making the ultimate determination." Roganti v. Metro. Life Ins. Co., 786 F.3d 201, 217 (2d Cir. 2015) (internal citation and quotation marks omitted). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." Pulvers v. First Unum Life Ins. Co., 210 F.3d 89, 92–93 (2d Cir. 2000) (citation omitted), abrogated on other grounds by McCauley v. First Unum Life Ins. Co., 551 F.3d 126 (2d Cir. 2008).

"[A] district court's review under the arbitrary and capricious standard is limited to the administrative record." Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995). "This rule is consistent with the fact that nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators and with the ERISA goal of prompt resolution of claims by the fiduciary." Id. (internal citation and quotation

marks omitted).

Clyne argues that the Board of Trustees' determination was arbitrary and capricious "because it failed to give any weight to the Plaintiff's extensive history of disability as it relates to his right knee," and that the Board of Trustees "willfully disregarded clear, unambiguous evidence that the Plaintiff should have received disability benefits pursuant to the Plan." (Pl.'s Mem. of L. in Opp. to Defs.' Mot. for Summ. J., Doc. No. 26-1, at 5.)  Clyne contends that his history of disability, as alleged in the complaint, supports a reasonable inference that at the time of termination of employment, he was no longer able to perform any of the duties of a bagger.  However, Clyne has not demonstrated that there is a genuine issue as to whether the denial of his application was arbitrary and capricious.

The administrative record shows that Clyne's last medical visit prior to termination of employment was June 19, 2013, which was over nine months before he left Stop & Shop, and that Clyne had been working even though he appeared to have qualified earlier for a Social Security disability benefit as of March 2013.  This is inconsistent with the Plan's definition of "disability," which requires that a claimant seeking to retire due to a permanent disability be permanently prevented from "engaging in any regular remunerative occupation," and the plaintiff points to nothing in the administrative record showing

that he provided the Board of Trustees with evidence that he remained qualified for a Social Security disability benefit.  In addition, the employer's records reflected that the termination was due to a "personal reason," not disability or some other medical reason.  Clyne's visit to Dr. Zell on July 8, 2014, over three months after his last day at Stop & Shop, does not establish that Clyne had a "disability," as defined in the Plan, at the time of termination of employment, which is what he had to show in order to retire due to permanent disability.  Thus, here the plan administrator's decision to deny the plaintiff's application was based on a reasonable interpretation of the Plan and was supported by substantial evidence.  The plan administrator was not required to give dispositive weight to Clyne's history of disability as it related to his right knee in light of other evidence as to Clyne's condition during a subsequent period.  Therefore, the decision was not arbitrary and capricious.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the defendants' Motion for Summary Judgment (Doc. No. 22) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.

Signed this 27th day of May, 2016 at Hartford, Connecticut.

_____/s/_____
Alvin W. Thompson
United States District Judge